UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **KEVIN PIERRE** | **CASE NO. 6:20-CV-01079** |
| **VERSUS** | **JUDGE JUNEAU** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Kevin Pierre, fully exhausted his administrative remedies prior to filing this action in federal court. The claimant filed an application for a period of disability and disability insurance benefits ("DIB"), alleging disability beginning on July 25, 2016.[1] His application was denied.[2] The claimant requested a hearing, which was held on October 19, 2019 before Administrative Law Judge Louis Volz

---

[1] See Administrative Record at 10.

[2] *Id.* at 44-61.

1

III.[4] The ALJ issued a decision on January 31, 2020,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from July 25, 2016 through the date of the decision. The claimant asked for review of the decision, but the Appeals Council concluded on June 25, 2020 that no basis existed for review of the ALJ's decision.[6] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on July 4, 1967.[7] At the time of the ALJ's decision, he was 52 years old. He attended high school through 9th grade.[8] He has past relevant work experience as an assembly line worker, a cleaner of rental equipment, and a cart pusher at Walmart.[9] His work was light and medium in exertional demand. He

---

[4] The hearing transcript is found at pages 24-43.

[5] Administrative Record at pp. 10-17.

[6] *Id.* at 1-3.

[7] *Id.* at 46.

[8] *Id.* at 137.

[9] *Id.* at 17.

alleges that he has been disabled since July 26, 2015 due to the effects of a brain tumor impinging on the pituitary gland and high blood pressure.[11]

## ANALYSIS

### A. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[12] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

---

[11]   *Id.* at 136.

[12]   *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13]   *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14]   *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

## B. Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[15] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[16] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[17] *Martinez v. Chater*, 64 F.3d at 174.

[18] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

both insured and disabled, regardless of indigence.[19] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[20]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

---

[19] See 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1382(a)(1) & (2).

[21] 42 U.S.C. § 1382c(a)(3)(A).

[22] 42 U.S.C. § 1382c(a)(3)(B).

## C.     <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[23] If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[24]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[26] The claimant's residual functional capacity is used at the fourth step to

---

[23]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[25]     20 C.F.R. § 404.1520(a)(4).

[26]     20 C.F.R. § 404.1545(a)(1).

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[27]

The claimant bears the burden of proof on the first four steps.[28] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[31] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

---

[27] 20 C.F.R. § 404.1520(e).

[28] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30] *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[31] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

### D. THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant meets the insured status requirements of the SSA through December 31, 2021, and that the claimant has not engaged in substantial gainful activity since July 25, 2016, the alleged onset date.[33] This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: malignant neoplasm of the nervous system and history of seizure disorder.[34] This finding is supported by evidence in the record, however the claimant argues that the ALJ failed to recognize additional impairments – including diabetes insipidus, frequent urination, and blurry vision -- as severe impairments.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[35] The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform work at the light level except that the claimant must avoid heights and the operation of heavy equipment.[36]

---

[33] *Id*. at 12.

[34] *Id.*

[35] *Id*. at 13.

[36] *Id*.

At step four, the ALJ found that the claimant is capable of performing his past relevant work as a steam cleaning machine operator and an assembler.[37]

At step five, the ALJ found that the claimant was not disabled from July 25, 2016 through January 31, 2020 (the date of the decision) because there are jobs in the national economy that he can perform.[38] The claimant challenges this finding.

E.   **THE ALLEGATIONS OF ERROR**

The claimant argues that the ALJ erred in failing to assign the claimant's diabetes, frequent urination, and blurry vision as severe impairments, erred in relying on the testimony of the vocational expert ("VE") who testified at his administrative hearing, and erred in concluding that he has the capacity for sustained work activity.

**1. Severity of impairments and substantial evidence in the record to support finding of non-disability**

The claimant contends that the ALJ properly noted that he suffers from two severe impairments: malignant neoplasm of the nervous system and history of seizure disorder. The claimant argues, however, that the neoplasm condition has given rise to two conditions that should have been determined to be severe impairments, namely, diabetes insipidus and blurry vision. The claimant argues that

---

37   *Id*. at 16.

38   *Id*. at 17.

the fatigue and heavy urination attendant to diabetes insipidus impair his ability to sustain work activity.

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 291 (5th Cir. 2000), *citing Stone v. Heckler*, 752 F.2d 1099, 1101 (5th. Cir. 1985) *(quoting Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984) and *citing Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir.1984); *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir.1984)).

The Commissioner argues that the claimant did not allege disability due to these conditions, either in his application materials or in his request for reconsideration.[39] The record shows that in his disability application, the claimant listed "pituitary tumor" and "high blood pressure" as his disabling impairments.[40] In his brief to this Court, however, the claimant cites to two documents in the record which he claims support his argument that his blurry vision and heavy urination are severe. The record confirms that blurry vision and frequent urination were issues discussed with the claimant's treating doctors. Specifically, on April 11, 2017, the

---

[39] *Id.* at 135, 148-49.
[40] *Id.* at 136.

claimant was examined at Ochsner, where he complained about vision problems.[41] An EEG performed that date was normal. On December 9, 2019, the claimant was examined at the LSU Health Sciences Center in New Orleans, at which time he complained that he was frequently waking up at night to urinate. Dr. Frank Culicchia noted that the claimant was told to increase his "DDAVP" medication to better regulate his fluid status.[42] The record shows that the ALJ discussed these complaints throughout in his ruling.

Under 20 C.F.R. §404.1512(a), only impairments that are indicated by the claimant and for which he provides evidence are considered.[43] The burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) ("Under the applicable regulations, if sufficient medical or other evidence is not provided by the claimant, the secretary is required to make a decision based on the information available."), *citing* 20 CFR §404.1516. Additionally, isolated statements in the record are not sufficient to establish the presence of an impairment, particularly when the claimant did not allege that impairment as a basis for disability. *See, e.g., Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (where the

---

[41] *Id.* at 593.
[42] *Id.* at 802-03.
[43] 20 C.F.R. 404.1512(a) states, in relevant part, "We will consider only impairment(s) you say you have or about which we receive evidence."

claimant did not contend that depression was an impairment at the administrative level and in the courts and pointed to no evidence indicating that her alleged depression affected her ability to work, such isolated comments, viewed within the whole record, were insufficient to raise suspicions of disabling depression). *See also Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989) ("isolated comments" about claimant's intellectual functioning, viewed within whole record, were insufficient to raise suspicion of mental retardation); *Shave v. Apfel,* 238 F.3d 592, 596 (5th Cir.2001) (no evidence that an alleged impairment precluded employment).

Importantly, the mere presence of an alleged or diagnosed medical condition does not establish the presence of any particular degree of impairment or functional loss unless there are objective clinical findings showing that work-related functional limitations are attributable to this condition. The claimant must show that he was so functionally impaired by his impairments that he was precluded from engaging in any substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983), *citing* D*emandre v. Califano,* 591 F.2d 1088 (5th Cir.1979); *Russell v. Secretary of Health, Education and Welfare,* 402 F.Supp. 613 (E.D.Mo.1975), *aff'd* 540 F.2d 353 (8th Cir.1976). Thus, the question is not whether a medical condition could cause certain symptoms, but rather whether the claimant has "abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In the instant case, the claimant has cited to two records showing that he complained of both frequent urination and blurry vision to his doctors on two different occasions, however, these self-reports are not supported by any objective medical evidence showing that the alleged conditions imposed ongoing functional limitations that would interfere with the ability to perform basic work activities. As the Commissioner points out, the claimant's arguments regarding the impact of these alleged additional impairments do not go beyond the bare assertion that the conditions in question "would have effects" on his work abilities. See Doc. 8 at 6. Indeed, on November 16, 2016, Dr. Culicchia reported that, despite having issues with diabetes insipidus, the patient's symptoms were "appropriately managed with DDAVP and cortisol replacement." Doc. 600. At that point, Dr. Culicchia reported that the claimant was "released to go back to work."[44] After his second surgery, the claimant was examined by Dr. Culicchia on December 9, 2019. At that time, the claimant reported that his vision was stable, but that he continued to have problems with frequent urination. Dr. Culicchia noted the need for increased DDAVP to manage his fluid status.[45]

---

[44] *Id.* at 600.
[45] *Id.* at 802.

While the claimant has provided medical evidence that he continued to suffer from blurry vision and frequent urination following both surgeries, it appears that the vision problem were reported to be stable by December 9, 2019 and problems with urination were addressed by his treating physician as requiring a higher dose of DDAVP. The claimant has presented no evidence showing that his frequent urination has more than a minimal effect on him such that it would interfere with his ability to work. In the absence of objective medical evidence indicating that the claimant's complaints of frequent urination and blurry vision functionally impaired his ability to work, the claimant fails to meet his burden of proving that these conditions are severe.

### 2. Reliance on VE testimony

The claimant argues that the ALJ erred in relying on the testimony of the VE because the VE was not asked to assume limitations relating to his alleged additional severe impairments. It is well-settled that an ALJ may properly rely on a vocational expert's response to a hypothetical question that "reasonably incorporate[s]" the limitations that the ALJ recognized in the residual functional capacity assessment. *See Hardman v. Colvin*, 820 F.3d 142, 148- 49 (5th Cir. 2016).

The undersigned has already discussed the finding that the claimant fails to meet his burden to show that his blurry vision and frequent urination attendant to diabetes insipidus were severe and should have been incorporated into the ALJ's

14

hypothetical questioning of the VE. The ALJ considered these additional complaints but did not include them in the hypotheticals because he did not consider them to be severe impairments. Because the claimant has offered no showing that the ALJ's hypothetical questioning of the VE did not properly reflect the limitations in his residual functional capacity assessment, he cannot show error specifically relating to the ALJ's reliance on the VE's testimony.

### 3. Ability to maintain employment

The claimant argues that the ALJ erred by not including a specific finding addressing his ability to maintain employment, relying on Social Security Ruling 96-8p in advancing this argument. In SSR 96-8p, the SSA stated:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 WL 374184 (SSA July 2, 1996).

In both *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986) and *Leidler v. Sullivan*, 885 F.2d 291 (5th Cir. 1989), the Fifth Circuit addressed the issue of a claimant's ability to sustain employment when the claimant suffered from severe mental illness. In *Liedler*, the court stated:

> The [Commissioner] must consider whether an applicant with a serious mental illness remains able to engage in substantial gainful activity when, although he is capable of performing work, he cannot maintain

15

> regular employment, [and] determine whether the claimant can hold whatever job he finds for a significant period of time.

885 F.2d at 292-93. *Liedler* echoed the rule of *Singletary v. Bowen*, which also involved a claimant with a severe mental disability. Since *Singletary* and *Liedler*, the Fifth Circuit has clarified its position to specifically note that a finding of fact addressing the claimant's ability to maintain employment is not a requirement in all cases. In *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003), the court explained:

> Here, the [ALJ] concluded that Dunbar was not disabled based on a determination of his . . . RFC. The ALJ cited the regulation describing RFC, 20 C.F.R. § 404.1545 (2002), as well as a Social Security Ruling, SSR 96–8p (1996), both of which make clear that RFC is a measure of the claimant's capacity to perform work "on a regular and continuing basis." The ALJ further found, after hearing the testimony of a vocational expert, that Dunbar "was capable of making a successful adjustment to work that exists in significant numbers in the national economy." In these circumstances, and absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC, we do not read *Watson* to require a specific finding that the claimant can maintain employment. *See Frank v. Barnhart,* 326 F.3d 618, 619 (5th Cir.2003) (on petition for rehearing) ("*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms.").[46]

---

[46] In *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the Fifth Circuit applied the *Singletary* and *Liedler* rationale to a case involving a claimant with back pain. The court concluded that although substantial evidence supported the ALJ's finding that the claimant was capable of performing medium work, the ALJ erred in failing to determine whether the claimant was capable not only of obtaining employment, but also maintaining it.

*See also Patterson v. Astrue*, 324 F. App' x 419, 422 (5th Cir. 2009).

In *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003), the court further clarified that separate consideration of the ability to maintain employment is needed only where there is "a situation which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." The court noted that in the absence of such a situation, the claimant's ability to maintain employment will generally be subsumed in the RFC finding, and no separate finding as to the ability to maintain employment is required. *Frank*, 326 F.3d at 619-20. Evidence that a claimant might have "good days" and "bad days" does not, by itself, require an explicit finding regarding the claimant's ability to maintain employment. *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

In this case, the claimant appears to argue that the fact that he has had two surgeries suggests his impairments "wax and wane" as contemplated by *Singletary* and its progeny. However, the ALJ's summary of the medical evidence shows that the claimant's impairments were, essentially, resolved by the two surgeries. Indeed, after his August 1, 2016 surgery, the claimant reported persistent blurry vision and having to urinate frequently. His medications were altered to address the frequent urination.[47] On November 16, 2016, the claimant was examined by Dr. Culicchia,

---

[47] *See* Administrative Record at 601-02.

who reported that although the claimant's hospital course was complicated by diabetes insipidus and low cortisol, he was appropriately managed with medication. The claimant was assessed to be doing "much better" since his surgery. Specifically, the claimant reported that his double vision was completely resolved, though he did sometimes get blurry vision. At that time, Dr. Culicchia reported that the claimant "was released to go back to work."[48]

On December 9, 2019, after the claimant's second surgery, the claimant was examined by Dr. Culicchia, who reported that the claimant stated he was doing well, had stable vision, but was urinating frequently at night. Dr. Culicchia indicated that the claimant's DDAVP needed to be increased to better regulate his fluid status. The claimant's seizure disorder was noted to be "well controlled."[49]

Thus, although the claimant argues that he suffered from diabetes insipidus after his August 2016 surgery and his November 2019 surgery, there is no objective medical evidence in the record showing that the claimant was experiencing specific and disabling functional limitations related to the impairment in question, beyond the time that would ordinarily be expected for surgical recovery. Considering the foregoing, the undersigned concludes that the claimant has not presented evidence of a situation wherein, by its nature, the claimant's physical ailments "wax and

---

[48] *Id.* at 600.
[49] *Id.* at 802-03.

wane" in their manifestation of disabling symptoms. Rather, the claimant's ability to maintain employment has been subsumed in the ALJ's RFC finding, and no separate finding as to the ability to maintain employment is required. Accordingly, the ALJ did not err in failing to specifically address the claimant's ability to maintain employment.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

    THUS DONE in Chambers on this 13th day of January, 2022.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**